980 P.2d 999

MARK W. VOELLMY, Petitioner–
Appellant,

v.

Michael F. BRODERICK, Administrative
Director of the Courts, State of Hawai'i,
Respondent–Appellee.

No. 22064.

Intermediate Court of Appeals of Hawai'i.

June 28, 1999.

Frances E.H. Lum and Staci I. Wong, Deputy Attorneys General, State of Hawai'i, on the briefs, for respondent-appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that in the administrative driver's license revocation hearing (revocation hearing) held herein pursuant to Hawai'i Revised Statutes (HRS) § 286–259 (Supp.1998), the purported information in police dispatch tapes was not "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," that is, evidence relevant to whether the stop and subsequent arrest of Petitioner–Appellant Mark W. Voellmy (Petitioner) for driving under the influence of intoxicating liquor (DUI) were valid.

We hold, further, that HRS § 286–255 (Supp.1998) requires an arresting officer to indicate on the notice of administrative license revocation (the notice) that the notice shall serve as a temporary driver's permit, unless the arrestee falls within any of the disqualifying categories listed in that section. We conclude, however, that an arresting officer's error in failing to so mark the notice does not warrant a reversal of a license revocation in light of the policy objective of HRS chapter 286, Part XIV (1993 and Supp. 1998) to decrease death and injury caused by DUI incidents. The grant by the administrative director of the courts of a credit for driving privileges to reduce the period of license suspension is an appropriate remedy for a violation of HRS § 286–255. That being so in this case, we conclude the violation of Petitioner's right to a temporary driving permit was remedied by the credit therefor that was extended to him by Respondent–Appellee Michael F. Borderick, Administrative Director of the Courts, State of Hawai'i (Director).

I.

The matters which follow are derived from the record on appeal. Honolulu Police De-

Timothy I. Mac Master, on the brief, for petitioner-appellant.

partment (HPD) Officer Robert Steiner (Officer Steiner) testified that he observed a dark-colored Acura turn left onto Hamakua Road from Kailua Road at approximately 2:30 a.m. on July 12, 1998. As he followed the Acura, Officer Steiner saw it speed up and make a left turn into the parking lot on Hekili Street. When Officer Steiner drove into the parking lot, he observed a male, later identified as Petitioner, standing next to a parked car that resembled the Acura.

Officer Steiner exited his vehicle and asked Petitioner "why he was speeding." Petitioner apologized, and at Officer Steiner's request, produced his driver's license. At about the same time, Officer Steiner smelled the odor of an alcoholic beverage, which prompted him to administer a horizontal gaze nystagmus eye test to Petitioner.

After concluding that Petitioner had not passed the test, Officer Steiner informed Petitioner that he was legally drunk and should not drive. Officer Steiner testified that he did not arrest Petitioner at this time because he had lost sight of the Acura as it pulled into the parking lot and thus was not certain Petitioner was the driver of that vehicle.

After advising Petitioner to take a cab home if he was going to patronize a nearby bar, Officer Steiner drove across the street to write up "tags." Subsequently, he observed Petitioner in the Acura drive past a stop sign on Hekili Street, without stopping.

Officer Steiner immediately pursued and halted the vehicle. When he asked Petitioner to produce a driver's license, Officer Steiner again became aware of the odor of an alcoholic beverage. He noted, further, that Petitioner's speech was slurred, his eyes were red and his face was flushed. He then asked Petitioner to perform a field sobriety test in which Appellant was to walk a line placing the heel of one foot to the toe of his other foot. Petitioner failed to match heel to toe on four of his steps. Officer Steiner then placed Petitioner under arrest for DUI.

Petitioner was taken to the police station where he declined to submit to a blood or breath test for measuring the amount of alcohol in his blood. Consequently, Officer Steiner confiscated Petitioner's license, and on July 12, issued Petitioner a form entitled "Notice of Administrative Driver's License Revocation," on which he had marked a printed box indicating that the notice was not a temporary driving permit.

The administrative hearing to review the license revocation was convened on behalf of the Director by a hearing officer who was appointed to conduct the hearing (the hearing officer). On August 6, 1998, Petitioner renewed a pre-hearing request to issue a subpoena duces tecum to HPD Custodian of Records (the custodian) for police dispatch tapes. Petitioner theorized that the tapes would show that Officer Steiner had called the police station after his first July 12 encounter with Petitioner and had been reminded of transporting Petitioner during a prior DUI arrest. According to Petitioner, this knowledge, rather than any objective criteria, may have led Officer Steiner to initiate the second July 12 stop of Petitioner.

Petitioner also argued that the notice issued to him on July 12 should have been rescinded by the Director because Officer Steiner had incorrectly indicated it was not a temporary driving permit. However, Petitioner conceded that up to the date of the hearing his girlfriend had been driving him to and from work. He admitted also that despite the notice, he had driven vehicles on the car lot where he worked.

On August 11, 1998, the hearing officer issued her findings of fact, conclusions of law and decision, sustaining the license revocation. In that connection, the hearing officer denied the subpoena request for the dispatch tapes. She found Officer Steiner's testimony that he did not call police dispatch credible. Alternatively, the hearing officer determined that the information sought from the tapes would not be "relevant." [1]

Additionally, the hearing officer agreed that Officer Steiner had incorrectly denied Petitioner a temporary driving permit. The

---

1. The hearing officer who was appointed to conduct the administrative driver's license revocation hearing also found the request was premature, vague, ambiguous, and not supported by the evidence presented.

hearing officer issued a temporary permit to Petitioner for August 6, 1998, the date of the revocation hearing, through August 11, 1998, the date of her decision. She also allowed Petitioner a driving credit of twenty-five days for the period during which Petitioner's driving privileges had been improperly withheld.

The hearing officer revoked Petitioner's driver's license for a period of one year from August 12, 1998, through and including July 17, 1999. This period represented a one-year license revocation less the twenty-five day credit.

Petitioner's petition for judicial review of the administrative revocation was heard on September 28, 1998. On October 19, 1998, the district court of the first circuit (the court) issued its decision and order affirming the administrative revocation.

## II.

On appeal, Petitioner argues that the hearing officer "abused [her] discretion and exceeded [her] constitutional and statutory authority" by 1) denying Petitioner's request to subpoena the custodian for the tapes, and 2) sustaining the administrative revocation despite the violation of HRS § 286–255.

### A.

#### 1.

The hearing officer's power to issue subpoenas is governed by HRS § 286–259(d) and (g). HRS § 286–259(d) states that the director shall have authority to "issue subpoenas." HRS § 286–259(g) states that "the director shall issue a subpoena" for "a law enforcement official who made a sworn statement" whom "the arrestee wishes to examine."

 When read together, HRS § 286–259(d) and (g) extend the administrative director's subpoena authority to officers or individuals who have not made sworn statements. *Park v. Tanaka,* 75 Haw. 271, 275,

859 P.2d 917, 920 (1993). While the issuance of such subpoenas is "left to the discretion of the director," the director should issue a requested subpoena unless the witness does not possess relevant evidence. *Biscoe v. Tanaka,* 76 Hawai'i 380, 385, 878 P.2d 719, 724 (1994). The failure to issue a subpoena for a witness who possesses relevant evidence would constitute an abuse of discretion. *Id.*

#### 2.

 The Hawai'i Supreme Court has recognized that "[t]he rules of evidence governing administrative hearings are much less formal than those governing judicial proceedings." *Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 31, 889 P.2d 705, 715 (1995). The Director is not an "agency" within the definition of the Hawai'i Administrative Procedure Act (HAPA), because he is an officer of the judicial branch.[2] Moreover, HRS § 286–263 specifically provides that "[n]either the administrative review nor the administrative hearing provided under [HRS chapter 286, Part XIV] shall be subject to the contested case requirements of chapter 91 [(HAPA)]." But because the Director does act, in revocation proceedings, in functionally the same manner as officers of the executive branch act in adjudicating contested cases, we believe the same proposition as to the informality of evidence rules applies in revocation proceedings. We believe, however, that in revocation proceedings, a definition of "relevant evidence" would reasonably include the definition found in Hawai'i Rules of Evidence (HRE) Rule 401 (1993), of relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Cf. Loui,* 78 Hawai'i at 31, 889 P.2d at 715 (stating that "as long as evidence [admitted at an administrative hearing] . . . w[as] relevant as defined by HRE Rule 401, it was proper for [the agency] to admit [it]").

**2.** According to the Hawai'i Administrative Procedure Act, the term "agency" means "each state or county board, commission, department, or officer authorized by the law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." Hawai'i Revised Statutes (HRS) § 91–1(1) (1993).

■ The hearing officer found there was no basis beyond Petitioner's suspicions to believe that the dispatch tapes referred to Petitioner's prior DUI arrest. Yet, even if Officer Steiner had learned of Petitioner's prior arrest from a dispatch call, this fact would not be of any consequence to the determination of the action. Petitioner does not dispute that he failed to stop at the Hekili Street stop sign before being stopped a second time. Therefore, the facts allegedly in the dispatch tapes would not be of any consequence to the conclusion that Officer Steiner had a reasonable basis to stop Petitioner.

Petitioner's slurred speech, red eyes, flushed face, and the odor of an alcoholic beverage provided the bases for subjecting Petitioner to a sobriety test. During the test, Petitioner exhibited signs of intoxication. Officer Steiner therefore had probable cause to believe Petitioner had driven under the influence of an intoxicating liquor. The purported information on the dispatch tapes would not alter this conclusion.

We therefore conclude the dispatch tapes would not have had any tendency to make the existence of any fact that was of consequence to the determination of the revocation proceeding more probable or less probable. Thus, the hearing officer did not abuse her discretion in refusing to issue a subpoena to the custodian.

### B.

Petitioner also argues that the administrative revocation of his driver's license should be reversed because Officer Steiner did not issue the notice in compliance with HRS § 286–255. HRS § 286–255 states, in relevant part:

Whenever a person is arrested in violation of section 291–4 [Driving under the influence of intoxicating liquor] or 291–4.4 [Habitually driving under the influence of intoxicating liquor] ... the arresting officer immediately shall take possession of any license held by the person and request the arrestee to take a test for concentration of alcohol in the blood. *Thereafter, the arresting officer shall complete and issue to the arrestee a notice of administrative rev-*

*ocation and shall* indicate thereon whether the notice shall serve as a temporary permit. The notice shall serve as a temporary permit, unless, at the time of arrest, the arrestee was unlicensed, the arrestee's license was revoked or suspended, or the arrestee had no license in the arrestee's possession.

(Emphasis added.) HRS § 286–255 was enacted as one of "a number of protections to the driver" because of "past concern expressed that insufficient due process protections were provided for drivers facing revocation proceedings." Sen. Stand. Comm. Rep. No. 670, in 1989 Senate Journal, at 1062.

### 1.

As set forth, HRS § 286–255(a) instructs that, after taking an arrestee's license, "the arresting officer *shall* complete and issue to the arrestee a notice of administrative revocation and *shall* indicate thereon whether the notice shall serve as a temporary permit". (Emphases added) The section also directs that the notice "*shall* serve as a temporary permit, unless, at the time of arrest, the arrestee was unlicensed, the arrestee's license was revoked or suspended, or the arrestee had no license in the arrestee's possession." (Emphasis added) HRS § 286–255 does not define the word "shall."

■ "Under general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation." *Saranillio v. Silva,* 78 Hawai'i 1, 10, 889 P.2d 685, 694, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995). Where a term is not defined by statute, this court may rely on extrinsic aids, such as dictionaries, in discerning the ordinary meaning of statutory terms. *State v. Chen,* 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994). The word "shall" "must be given a compulsory meaning ... and is inconsistent with a concept of discretion." *Black's Law Dictionary* 1375 (6th ed.1990); *see also Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 150 n. 17, 931 P.2d 580, 592 n. 17 (1997) (observing that "[t]he word 'shall' is generally construed

as mandatory in legal acceptation"). Construing "shall" as imparting a compulsory meaning to the statute, we agree with Petitioner that the obligations imposed on Officer Steiner by HRS § 286–255 were mandatory and Petitioner was manifestly entitled to a temporary driving permit. *See also Simmons v. Administrative Director*, 88 Hawai'i 55, 66, 961 P.2d 620, 631 (1998).

### 2.

However, there is nothing in HRS chapter 286 which suggests that a violation of the mandatory provision in HRS § 286–255 requires reversal of a license revocation. Petitioner contends, nevertheless, that reversal is required under the authority of *Aspinwall v. Tanaka*, 9 Haw.App. 396, 405, 843 P.2d 145, 146, *cert. denied*, 74 Haw. 651, 845 P.2d 1193 (1993). In *Aspinwall*, this court held that if a "provision is mandatory, the failure to follow it will render the proceeding to which it relates illegal and void." *Aspinwall* invalidated a revocation order issued in an administrative proceeding which had not commenced within twenty-five days of the notice of license revocation, as required by HRS § 286–259 (Supp.1991). As such, *Aspinwall* was specifically concerned with the initiation of an "administrative revocation of [a] driver's license proceeding" within the required time limits. *Id.*, 843 P.2d at 145. The failure to issue a temporary license, as required by HRS § 286–255, is not a provision related to the time mandates for commencing an administrative revocation proceeding. Thus, *Aspinwall* is not apposite.

### 3.

■ In *Miller v. Tanaka*, 80 Hawai'i 358, 359–60, 910 P.2d 129, 130–31 (App.), *cert. denied*, 80 Hawai'i 357, 910 P.2d 128 (1996), we held, in a related situation, that an officer's failure to notify an arrestee of the Director's discretion to issue a conditional driving permit pursuant to HRS § 286–257(a)(1)(c) (1993) did not entitle the petitioner to relief since the petitioner was in fact "issued a conditional permit to drive," and consequently "suffered no prejudice." Similarly, we believe that the failure of Officer Steiner to issue the temporary driving permit to Petitioner does not entitle Petitioner to a reversal of his license revocation.

Petitioner does not demonstrate that he was harmed in any significant way by the lack of a temporary permit. The hearing officer found that Petitioner had little trouble traveling to work during the period he was denied driving privileges, and in fact, drove while at work in spite of the prohibition in the notice. More significantly, the hearing officer, in the exercise of the director's discretion, granted Petitioner a twenty-five-day credit for the driving privileges lost. We cannot conceive of circumstances which would not be amenable to curing an HRS § 286–255 violation by way of an appropriate credit for driving privileges. In any event, we do not believe that reversal of an administrative revocation would be an appropriate remedy in light of the legislative intent in HRS chapter 286, Part XIV to use "revocation [as] . . . an additional method of decreasing the incidence" of cases involving "death, injury, and untold personal tragedy" caused by "driving under the influence of intoxicating liquors." Hse. Stand. Comm. Rep. No. 1191, in 1989 House Journal, at 1269. Accordingly, we conclude that any violation of HRS § 286–255 was adequately remedied by this proper exercise of the Director's discretion.

### III.

For the foregoing reasons, we affirm the October 19, 1998 decision and order of the court, affirming the August 11, 1998 decision of the Director which sustained the July 12, 1998 notice.