361 P.3d 1260

**Ronda L. RAMOS, Petitioner–Appellant,**

v.

**The ESTATE OF Peter Joseph ELSENBACH, Elsenbach Children's Trust, and Christopher Elsenbach, Respondents–Appellees.**

**No. CAAP–14–0000897.**

Intermediate Court of Appeals of Hawai'i.

Oct. 22, 2015.

Ronda L. Ramos, on the briefs, Petitioner–Appellant pro se.

Kenn N. Kojima and Edward J. Bybee, Honolulu, separately, on the briefs, for Respondents–Appellees.

FOLEY, Presiding J., and LEONARD, J. with REIFURTH, J. dissenting Separately.

Opinion of the Court by FOLEY, J.

Petitioner–Appellant pro se Ronda L. Ramos (**Ramos**) appeals from the "Order Dismissing With Prejudice Claimant's Petition For Relief And Allowance Of Claims Filed October 22, 2013" (**Order**), entered on May 22, 2014 in the Circuit of the Third Circuit[1] (**circuit court**).

On appeal, Ramos contends the circuit court erred by

(1) denying "Claimant's Petition for Relief and Allowance of Claims" (**Petition**) based on a finding that it lacked jurisdiction to grant the Petition;

(2) failing to consider and apply Hawai'i Probate Rules (**HPR**) 3 and 10 when dismissing Ramos' Petition; and

(3) requiring Ramos to commence a proceeding before the appointment of a personal representation.

## I. BACKGROUND

On April 15, April 22, and April 29, 2013, Respondents–Appellees Estate of Peter Joseph Elsenbach, Elsenbach Children's Trust, and Christopher Elsenbach (collectively, **Respondents**), published "Notice to Creditors of Peter Joseph Elsenbach" in the West Hawaii Today newspaper (**Notice to Creditors**). The Notice to Creditors stated, in pertinent part, "All creditors of the above-name decedent [Peter Joseph Elsenbach] and/or trust are hereby notified to present their claim . . . within four (4) months from the date of the

1. The Honorable Elizabeth A. Strance presided.

first publication of this notice, or they will be forever barred."

On August 15, 2013, Ramos prepared and delivered four, "Creditor's Claims" to Respondents.

In separate letters dated and mailed on August 21, 2013, Respondents' attorney notified Ramos that all four of her claims dated August 15, 2013 were disallowed (**disallowance letters**). The disallowance letters indicated that "if [she] wish[ed] to pursue the claim, [she] must petition the probate court or commence a proceeding for allowance of the claim no later than sixty days after the mailing of this letter" and that "[f]ailure to take action within [the] sixty-day period will bar [her] from future action to enforce [her] claim."

On October 22, 2013, Ramos filed her Petition. Ramos' Petition sought to claim the following from Respondents:

A) $500.00 to reimburse money borrowed from a friend to buy back some of my personal property that was being sold at an estate sale by the new owners of my previous marital residence.

B) $360,000.00 for my providing 24 hour per day care giving services for nine (9) years to Decedent that he medically needed, but he refused to hire a nurse to provide at least the nighttime services when he required his air mask to be put back on him every 45 to 60 minutes from 8PM to 7AM on every single night of the week, and I saved his life three (3) times in the nine (9) years (Once he was totally flat lined).

C) $344,500.00 for my personal property that consisted of approximately 1/3rd I brought into our marriage and approximately 1/3rd I earned and brought into our nine (9) year pre-marital relationship and approximately 1/3rd that were gifts to me from both my friends and Decedent (this was part of the prior divorce court property return orders).

D) $187,400.00 for my one-half of the joint property provision of the Divorce Decree, and $4,757,018.76 comprises my one-half of the joint financial asset provision of

the Divorce Decree (This amount is provided that the family releases all interest they may have in the Delrow Family Trust that I care take [sic] for the trustee, since Decedent committed fraud by borrowing me my [sic] own money and stating it was his money and that I owed him for it).

On December 2, 2013, Respondents filed their objection to Ramos' Petition.

The circuit court held hearings on Ramos' Petition on January 6, 2014 and February 10, 2014.[2] On May 22, 2014, the circuit court entered its Order, finding that it did not have jurisdiction over Ramos' Petition because her Petition was untimely. The circuit court dismissed Ramos' Petition with prejudice. On June 20, 2014, Ramos filed her notice of appeal.

## II. STANDARD OF REVIEW

■ "The existence of jurisdiction is a question of law that [the appellate court reviews] de novo under the right/wrong standard." *Captain Andy's Sailing, Inc. v. Dep't of Land and Natural Res.*, 113 Hawai'i 184, 192, 150 P.3d 833, 841 (2006) (citation and internal quotation marks omitted).

## III. DISCUSSION

■ Ramos contends the circuit court erred in finding that it lacked jurisdiction to grant Ramos' Petition. The circuit court found that, under Hawaii Revised Statute (HRS) 560:3–806(a) (2006 Repl.), it did not have jurisdiction over Ramos' Petition because she failed to file her Petition within sixty days from when Respondents mailed their disallowance letters.

HRS § 560:3–806(a) provides:

**2.** Transcripts from the January 6, 2014 and February 10, 2014 hearings were not included in the record on appeal.

**3.** HRS § 560:1–304 (2006 Repl.) provides that "[u]nless specifically provided to the contrary in this chapter or unless inconsistent with its provisions, the Hawai'i probate rules govern formal and informal proceedings under this chapter."
  HPR Rule 10 provides in relevant part:
  **Rule 10. COMPUTATION OF TIME.**
    (a) **Computation.** In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the

§ 560:3–806 **Allowance of claims.** (a) As to claims presented in the manner described in section 560:3–804 within the time limit prescribed in section 560:3–803, the personal representative may mail a notice to any claimant stating that the claim has been disallowed.... Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative <u>not later than sixty days after the mailing of the notice of disallowance</u> or partial allowance if the notice warns the claimant of the impending bar. If the notice does not warn the claimant of the impending sixty-day bar, then the claim shall be barred if no petition for allowance or other proceeding on the claim has been brought within eighteen months of the date of the decedent's death.

(Emphasis added.)

Respondents mailed their disallowance letters to Ramos on August 21, 2013. The disallowance letters specifically indicated that "if [she] wish[ed] to pursue the claim, [she] must petition the probate court or commence a proceeding for allowance of the claim no later than sixty days after the mailing of this letter" and warned that "[f]ailure to take action within [the] sixty-day period will bar [her] from future action to enforce [her] claim." Thus, HRS § 560:3–806(a) required Ramos to file her Petition in the circuit court within sixty days.

Computation of time in probate proceedings are governed by HPR Rule 10.[3] Under

designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday, nor a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and holidays shall be excluded in the computation. As used in this rule, "holiday" includes any day designated as such pursuant to Section 8–1 of the [HRS].
  ....

HPR Rule 10(d), "[w]henever a person has the right or is required to act within a prescribed period after the service of a notice or other paper upon the person and the notice or paper is served upon the person by mail, <u>two days</u> shall be added to the prescribed period." (Emphasis added.) The commentary to HPR Rule 10(d) indicates that "[t]his rule conforms the timing requirements with respect to mailings to other court rules."

In *Rivera v. Dep't of Labor & Indus. Relations,* 100 Hawai'i 348, 350, 60 P.3d 298, 300 (2002), the Hawai'i Supreme Court applied the two-day mail rule provided in Hawai'i Rules of Civil Procedure (**HRCP**) Rule 6(e) to compute the prescribed period for appealing an agency's decision under HRS § 91–14(b) (2012 Repl.). "HRS § 91–14(b) provides in relevant part: '(b) . . . proceedings for review shall be instituted in the circuit court within thirty days . . . after service of the certified copy of the final decision and order of the agency <u>pursuant to rule of court</u>[.]" *Rivera,* 100 Hawai'i at 349, 60 P.3d at 299. The supreme court noted that "[t]he statute is mandatory with respect to commencement of review proceedings within the time prescribed." *Id.* Because HRCP Rule 5(b)(3), provides that service is complete upon mailing, the supreme court held that HRCP Rule 6(e) operated to provide the parties with two additional days to file a notice of appeal. *Id.* The supreme court reasoned that the two day mail rule is meant to "alleviate any unfairness that might be caused by transmission by mail."[4] *Id.* at 351, 60 P.3d at 301.

Similarly, this court has supported use of the two-day mail rule. In *In re Brandon,* 113 Hawai'i 154, 158, 149 P.3d 806, 810 (2006) this court utilized Hawaii Administrative Rules (**HAR**) § 6–61–21(e) (2005), which added two days to the prescribed period for filing a motion for reconsideration or rehearing under HRS § 271–32(b) (2007 Repl.), to determine that appellant's motion for reconsideration of a Public Utility Commission (**PUC**) order was untimely. "When an aggrieved party intends to appeal from a PUC order, '[t]he motion for reconsideration or a rehearing shall be filed within ten days after the decision and order has been served[.]'" *In re Brandon,* 113 Hawai'i at 157, 149 P.3d at 809 (citing HRS § 271–32(b)); *see also* HAR § 6–61–137 (2005) ("The motion shall be filed within ten days after the decision or order is served upon the party[.]"). Because service of the PUC order was effective on the date when "the document is properly stamped, addressed, and mailed to the last known address of the party on file with the commission or to its attorney[,]" the two-day mail rule, under HAR § 6–61–21(e), applied to give the aggrieved party two additional days to file a motion for reconsideration of the order. *In re Brandon,* at 157–58, 149 P.3d at 809–10 (brackets omitted).

In *Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of City & Cnty. of Honolulu,* 86 Hawai'i 343, 349, 949 P.2d 183, 189 (App.1997), this court determined how to compute the prescribed time for appealing a Department of Land Utilization (**DLU**) Director's decision to the Zoning Board of Ap-

---

**(d) Additional Time After Service by Mail.** Whenever a person has the right or is required to act within a prescribed period after the service of a notice or other paper upon the person and the notice or paper is served upon the person by mail, two days shall be added to the prescribed period.

4. The Hawai'i Supreme Court in *Rivera* cited Professors Wright and Miller's analysis of HRCP Rule 6(e)'s Federal Rules of Civil Procedure counterpart to support its policy determination:

Professors Wright and Miller have commented that the counterpart Rule 6(e) of the Federal Rules of Civil Procedure ("FRCP"), which provides an additional three days to take action where service has been made by mail,

clearly is intended to protect parties who are served notice by mail from suffering a sys-

tematic diminution of their time to respond through the application of Rule 5(b), which provides that service is complete upon mailing, not receipt; the additional three days provided by Rule 6(e) to the party being served represent a reasonable transmission time, and a fair compromise between the harshness of measuring strictly from the date of mailing and the indefiniteness of attempting to measure from the date of receipt, which in many cases would be unverifiable.

4A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1171, at 514–15 (1987).

*Rivera,* 100 Hawai'i at 351 n. 4, 60 P.3d at 301 n. 4. We note that FRCP Rule 6(e) became Rule 6(d) in 2007.

peal (**ZBA**), pursuant to ZBA Rule 3.2. A "written petition appealing an action of the [DLU] Director must be received at the [DLU] within 30 days of the date of mailing or personal service of the [DLU] Director's written decision[.]" *Waikiki Marketplace*, 86 Hawai'i at 349, 949 P.2d at 189 (citing ZBA Rule 3.2). One question at issue in *Waikiki Marketplace* was whether HRCP Rule 5(b) applied to ZBA Rule 3.2 to determine the manner in which the court was to calculate the date the DLU Director's decision was mailed. *Id.* at 350, 949 P.2d at 190. Although the court in *Waikiki Marketplace* held that HRCP Rule 5(b) was not applicable to a petition from the DLU Director to the ZBA, the court noted that if it were applicable, HRCP Rule 5(b) would invoke HRCP Rule 6(e) adding two additional days to the prescribed period. *Id.* at 350–51, 949 P.2d at 190–91.

This court has previously declined to apply the two-day mail rule where a statute's legislative history indicates an intent that the rule not apply. *See Danielson v. Tanaka*, 9 Haw.App. 484, 848 P.2d 383 (1993). Pursuant to the procedures set forth in the Administrative Revocation of Driver's License Law, Part XIV of HRS Chapter 286 (Repealed 2000), the appellant in *Danielson* had his license administratively revoked for driving under the influence. *Id.* at 486, 848 P.2d at 384. Under HRS § 286–260(a) (repealed 2000), "If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed." *Id.* at 486, 848 P.2d at 385 (quoting HRS § 286–260(a) (1993) (repealed 2000) (emphasis omitted)). Appellant filed a petition for judicial review, but the District Court of the First Circuit dismissed his appeal as untimely. *Id.*

On appeal, appellant argued that his petition was timely because, under District Court Rules of Civil Procedure (**DCRCP**) Rule 6(e), the court should have added two days to the prescribed thirty day time period. *Id.* at 487, 848 P.2d at 385. When the *Danielson* court examined the legislative intent behind the Administrative Revocation of Driver's Li-

cense Law, Part XIV of HRS [c]hapter 286, we "found that the legislature desired that the driver's license revocation process be 'expeditious,' that the law be administered 'property and quickly,' and that 'any lengthy delay in the hearing process' is not to be tolerated." *Id.* at 488, 848 P.2d at 385 (citing *Aspinwall v. Tanaka*, 9 Haw.App. 396, 403, 843 P.2d 145, 149 (1992)). The *Danielson* court held that DCRCP Rule 6(e) was not applicable to enlarge the thirty-day filing requirement under HRS § 286–260(a) for two reasons. First, the legislative history of the law indicated an intent that "judicial review of the administrative license revocation decision be expeditious and without delay." Second, the legislature did not intend that the time period be computed in accordance with DCRCP Rule 6 because of "Part XIV's inclusion of HRS § 286–266 [ (1993) (repealed 2000) ] regarding computation of time, which is covered in DCRCP Rule 6(a), and Part XIV's non-inclusion of contents of DCRCP Rule 6(e) in Part XIV." *Id.* at 488, 848 P.2d at 385–86. Without applying the DCRCP's two-day mail rule, this court determined that appellant's petition was untimely. *Id.*

In the instant case, HPR's rules govern the calculation of the time prescribed in HRS § 560:3–806(a). HRS § 560:1–304 (Practice in court), provides that "[u]nless specifically provided to the contrary in this chapter or unless inconsistent with its provisions, the Hawai'i probate rules govern formal and informal proceedings under this chapter." The Uniform Probate Code's process for presenting a claim does not indicate that HPR rules should not apply or that application of HPR rules would be inconsistent with the code's provision. *See* HRS §§ 560:3–801 et. seq (2006 Repl.). Unlike *Danielson*, the Uniform Probate Code does not include its own provision for how to compute time restraints, further indicating an intent to utilize HPR's rules for computation of time. *Compare* Uniform Probate Code, HRS chapter 560 *with Danielson*, 9 Haw.App. at 488, 848 P.2d at 386 (summarizing Administrative Revocation of Driver's License Law, Part XIV of HRS Chapter 286). Also unlike *Danielson*, HRS § 560:3–806's legislative history does not indicate that policymakers intended the

process for presenting a claim be "expeditious" or administered "properly and quickly." *Compare* Conf. Comm. Rep. No. 77, in 1996 House Journal, at 991, in 1996 Senate Journal, at 773 (Uniform Probate Code, HRS Chapter 560's legislative history), *with* Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 681–82 (statement of Sen. Sailing) (Administrative Revocation of Driver's License Law, Part XIV of HRS chapter 286's legislative history). Therefore, much like the court's determination in *Rivera*, the computation of time pursuant to HRS § 560:3–806(a) is governed by HPR Rule 10, which includes HPR's two day mail rule under HPR Rule 10(d). *See Rivera*, 100 Hawai'i at 350, 60 P.3d at 300.

HRS § 560:3–806(a) established that the sixty-day period in which Ramos may have filed her Petition for claims began to run after the mailing of the disallowance letters. *See* HRS § 560:3–806(a). Therefore, HRS § 560:3–806(a) triggered HPR Rule 10(d), and two days were added to the prescribed time period, resulting in a sixty-two-day period to file her Petition. *See id.;* HPR Rule 10(d); *Rivera*, 100 Hawai'i 348, 351, 60 P.3d 298, 301 (holding that "when HRCP Rule 6(e) is triggered ... HRCP Rule 6(e) is applied instantly to extend the original prescribed period for action by two days") (emphasis omitted)). Ramos, therefore, had a total of sixty-two days to file her Petition with the circuit court.

Pursuant to HPR Rule 10, the sixty-two-day time limit began to run on August 22, 2013, the day after Respondents mailed their disallowance letters. *See* HPR Rule 10 ("In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included."). The sixty-second day was Tuesday, October 22, 2013. Ramos needed to have filed her claim by that date in order to be within the sixty-two-day period. Ramos filed her Petition on October 22, 2013 at 3:43 PM. Ramos' Petition was, therefore, timely

5. Because we hold that Ramos' Petition was timely, we need not address her other points on

and the circuit court erred in finding that it did not have jurisdiction over Ramos' Petition.[5] *See* HRS § 560:3–806(a).

## IV. CONCLUSION

Therefore, we vacate the "Order Dismissing With Prejudice Claimant's Petition For Relief And Allowance Of Claims Filed October 22, 2013," entered on May 22, 2014 in the Circuit of the Third Circuit, and remand this case for further proceedings consistent with this opinion.

Dissenting Opinion by REIFURTH, J.

The majority applies the two-day extension for service by mail provided for in Hawai'i Probate Rules ("HPR") Rule 10(d) and concludes that the circuit court erred in holding that it did not have jurisdiction over Ramos's Petition. I conclude, however, that HPR Rule 10(d) has no application in the case of a petition filed under Hawaii Revised Statutes ("HRS") § 560:3–806(a)(2006) and therefore does not enlarge the filing period in this case. I base my conclusion on the plain language of the rule and statute in question, on analogous caselaw, and on the underlying purpose of enlargement rules such as this. Without the two-day enlargement for service by mail, Ramos's petition was untimely. As such, I respectfully dissent.

My disagreement with the majority is rooted in the plain language of HRS § 560:3–806(a), which does not mention *service*—whether transmitted by mail or otherwise—anywhere, and HPR Rule 10(d), which enlarges a prescribed time period specifically when it is triggered by the date of *service* and service has been transmitted by mail. Indeed, the drafters of HRS § 560:3–806(a) specified that the sixty-day time-period for filing a petition would begin to run "after the *mailing* of the notice of disallowance." (Emphasis added.) *See generally Enoka v. AIG Haw. Ins. Co.*, 109 Hawai'i 537, 544, 128 P.3d 850, 857 (2006) (" '[W]here the terms of a statute are plain, unambiguous and explicit, ... our sole duty is to give effect to the statute's plain and obvious meaning.' " (quot-

appeal.

ing *T–Mobile USA, Inc. v. Cnty. of Haw. Planning Comm'n*, 106 Hawai'i 343, 352–53, 104 P.3d 930, 939–40 (2005))). And if the drafters had intended the sixty-day time-period to begin instead *after the service of a notice of disallowance by mail*, as the majority holding suggests, they likely would have used more precise language. *Compare* Haw. Rev.Stat. § 560:3–806(a) ("Every claim . . . is barred so far as not allowed unless the claimant files a petition . . . not later than sixty days *after the mailing of the notice of disallowance.*" (emphasis added)), *with* Haw.Rev. Stat. § 560:5–309(a) ("A copy of a petition for guardianship and notice of the hearing on the petition *shall be served personally* on the respondent. . . . A failure to *serve* the respondent with a notice . . . shall preclude the court from granting the petition." (emphasis added)). Under the ordinary canons of construction employed by this court,[1] I read the drafters' choice not to reference *service* as intentional.

The lack of reference to *service* in HRS § 560:3–806(a) removes that statute from the purview of HPR Rule 10(d), which, by its plain language, only applies to enlarge a statutory time period when a particular method of service is used. Haw. Prob. R. 10(d) ("[T]wo days shall be added to the prescribed period" in situations where that prescribed period begins "after the *service* of a notice or other paper . . . and the notice or paper *is served . . . by mail.*" (emphasis added)). Indeed, where our courts have applied Hawai'i Rules of Civil Procedure ("HRCP") Rule 6(e)—a rule with substantively identical language to HPR Rule 10(d)—to enlarge a prescribed time period by two days, those courts have done so only where that time period specifically begins to run upon *service* of some paper or other document *and* where service has been transmitted by mail.[2] Furthermore, federal courts interpreting Federal Rule of Civil Procedure ("FRCP") Rule 6(d), formerly 6(e), in analogous cases *have* based their holdings on these exact grounds.[3] *See*

---

1. *See Fagaragan v. State*, 132 Hawai'i 224, 242, 320 P.3d 889, 907 (2014) ("[This court follows] the canon of construction expressio unis est exclusio alterius, [which] holds that 'to express or include one thing implies the exclusion of the other, or of the alternative.' " (quoting *Black's Law Dictionary*, 661 (9th ed. 2009)); Haw.Rev. Stat. § 1–16 (2009) ("What is clear in one statute may be called in aid to explain what is doubtful in another.").

2. *Compare Rivera v. Dep't of Labor & Indus. Relations*, 100 Hawai'i 348, 351 n. 4, 60 P.3d 298, 301 n. 4 (2002) (applying HRCP Rule 6(e)'s two-day extension to HRS § 91–14(b), under which the triggering event is "service of the certified copy of the final decision and order" (emphasis added), where service was transmitted by mail), *and In re Brandon*, 113 Hawai'i 154, 157–58, 149 P.3d 806, 809–10 (App.2006) (applying Hawai'i Administrative Rules § 6–61–21(e) (2005), which is substantively identical to HRCP Rule 6(e), to enlarge a ten-day period beginning "after the decision and order *has been served*" under HRS § 271–32(b) (Supp.2005) (emphasis added)), *with Danielson v. Tanaka*, 9 Haw.App. 484, 488, 848 P.2d 383, 385–86 (1993) (per curiam) (holding that the two-day extension in District Court Rules of Civil Procedure Rule 6(e), which is identical to HRCP Rule 6(e), does not apply to enlarge HRS § 286–260(a)'s provision stating that the petition for review must be filed "within thirty days after the administrative hearing decision *is mailed*" (some emphasis removed), yet basing its holding on legislative intent rather than plain language of the provisions in question), *and Waikiki–Madeyski v. EAN Hold-*

ings, *LLC*, No. CAAP–14–0001129, 2015 WL 3422267, at *1 n. 3 (Hawai'i.Ct.App. May 27, 2015) (declining to apply HRCP Rule' 6(e) to the limitations period prescribed by HRS § 386–88 (Supp.2014), which allows parties to file a notice of appeal "within thirty days after *mailing* of a certified copy of the decision or order" (emphasis added), yet not discussing the incompatible language of the provisions at issue). While the courts in *Danielson* and *Waikiki–Madeyski, supra,* did not explicitly base their decisions on the date-of-mailing versus date-of-service distinction, their results are consistent with the plain-language analysis outlined here.

3. *E.g., Hatchell v. United States*, 776 F.2d 244, 246 (9th Cir.1985) (declining to extend the time for commencing suit because "the limitations period applicable to Hatchell's claim runs from 'the date of mailing,' 28 U.S.C. § 2401(b), and not from 'the service of a notice' as contemplated by [FRCP] Rule 6(e)."); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1357 (5th Cir.1975) (stating the same and citing *Clements v. Fla. E. Coast Ry. Co.*, 473 F.2d 668, 670 (5th Cir.1973) (per curiam) (finding that "[FRCP Rule] 6(e) has no application" where the proscribed limitations period "ran from the date the order was filed," and not from the date of service); *Army & Air Force Exch. Serv. v. Hanson*, 250 F.Supp. 857, 858–59 (D.Haw.1966) (holding that FRCP Rule 6(e) did not apply to enlarge the time for filing a complaint to review an order because, although "[i]t is true that the service of a copy of the order is necessary for its validity[,] nothing . . . indicates that the thirty-day period [under 33 U.S.C.

*generally Rivera*, 100 Hawai'i at 351 n. 4, 60 P.3d at 301 n. 4 (interpreting HRCP Rule 6(e) by reference to its counterpart, FRCP Rule 6(d)); *accord Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of the City & Cnty. of Honolulu*, 86 Hawai'i 343, 350 n. 4, 949 P.2d 183, 190 n. 4 (1997). So too have state courts interpreting rules similar to FRCP Rule 6(d).[4]

The purpose behind enlargement rules also supports the conclusion that HPR Rule 10(d) is not applicable to the case at hand. Generally, "service by mail is complete upon mailing," rather than upon receipt, and certain prescribed limitation periods are tolled by the date of service, where there are multiple methods of service available to parties. Haw. R. Civ. P. 5(b)(1) and (3). As such, courts apply extension provisions like HPR Rule 10(d) to mitigate any disadvantage to a person who is served by mail, rather than by any other available methods.[5] Under HRS § 560:3–806(a), however, there are no alternative methods for transmitting the notice of disallowance. Thus, the rationale typically supporting extension rules such as HPR Rule 10(d) does not apply.[6]

Because HRS § 560:3–806(a)'s sixty-day time period is measured from the "date of mailing," and not from the date of service,

---

921(a)] is to commence after service of a copy of the order."). *See also, e.g., United States ex rel. Ten. Valley Auth. v. Easement & Right-of-Way*, 386 F.2d 769, 771 (6th Cir.1967) (refusing to apply FRCP Rule 6(e) to enlarge the twenty-day time limitation under 16 U.S.C. § 831x, which states that "[e]ither or both parties may file exceptions ... within twenty days from the date of filing ...," because, "[a]lthough the Clerk may send a copy of the award by mail, the Rule clearly contemplates situations in which actual service is offered by mail[,]" and "[t]he act of depositing the exception in the mail is not a filing").

4. *E.g., Chance v. Wash. Metro. Area Transit Auth.*, 173 Md.App. 645, 920 A.2d 536, 542–43 (Spec.App.2007) ("[T]he triggering event under Section 9–737, to wit, 'the date of the mailing,' is substantially different from 'service ... by mail' under [Maryland] Rule 1–203(c)[,]" to which former FRCP Rule 6(e) is the federal analogue.); *Chandler v. United States*, 846 F.Supp. 51, 53 (M.D.Ala.1994) (holding that FRCP Rule 6(e) is not applicable to 28 U.S.C. § 2401(b), which specifies that the six-month limitations period commences "after the date of *mailing* ... of notice"). *See also, e.g., Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D.Va.1984) (stating that "[t]he additional three days provided by [FRCP] Rule 6(e) do not apply to judgments which are not the subject of 'service,' [such as FRCP Rule 59(e) motions, which 'must be filed no later than 28 days after the entry of the judgment,'] whether or not the mails were used to transmit the judgment from the Clerk to a party[,]" and citing decisions from the 1st and 5th Federal Circuits in support); *Pizzichil v. Motors Ins. Corp.*, 90 F.R.D. 119, 121 (E.D.Pa.1981) (" '[E]ven though the operative statute or regulation provides that notice of the decision must be mailed to a party, the filing ... [is what] trigger[s] the period within which action must be taken[, a]nd where this is the case, [FRCP] Rule 6(e) has no application." (quoting 2 Moore, *Federal Practice* ¶ 6.12, p. 1500.210)).

5. *See Rivera*, 100 Hawai'i at 351, 60 P.3d at 301 ("HRCP Rule 6(e) was put in place to alleviate any unfairness that might be caused by transmission [of service] by mail."); *Waikiki Marketplace*, 86 Hawai'i at 350 n. 4, 949 P.2d at 190 n. 4 (citing Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1171, at 514–15 (1987)); *see also, Chance*, 920 A.2d at 543 ([Where a]ll persons entitled to appeal ... have exactly the same amount of time in which to note an appeal[, the local counterpart to FRCP Rule 6(e)] is not needed to equalize the actual time within which an appeal can be noted."); *cf. Vazquez–Rivera v. Figueroa*, 759 F.3d 44, 49 (1st Cir.2014) (noting that FRCP 6(d) would not have applied if service had been delivered by hand, rather than by mail). This underlying purpose also explains why courts refuse to apply otherwise-applicable, HPR Rule 10(d)-type extensions to situations wherein the date of delivery is known. *See Young v. Desco Coatings of Kan., Inc.*, 179 F.R.D. 610, 613 (D.Kan.1998) (noting that the 3rd, 6th, and 11th Federal Circuits do not apply FRCP's three-day rule where the actual date of receipt is known); *e.g., Waikiki Marketplace*, 86 Hawai'i at 352, 949 P.2d at 192 (declining to apply HRCP Rule 6(e)'s two-day extension to enlarge the thirty-day time period under HRS § 91–14(b) where appellees failed to establish proof of mailing, and instead using the delivery date, which was established in the record, "as the measuring rod for determining the timeliness" of the appeal).

6. *See, e.g., Madden v. Cleland*, 105 F.R.D. 520, 525 (N.D.Ga.1985) (holding that FRCP Rule 6(e)'s extension did not apply where court precedent stated "that the defendants' duty to respond is triggered by their execution of the acknowledgment [of service] rather than by the mailing of service to them," and as such, "[t]here is no need to roughly equalize the number of working days for litigants served personally and for those served by mail to prepare an answer to a complaint when the period for both litigants begins with their acknowledgment of receipt of process").

and because the rationale typically supporting extension rules is inapplicable in such cases, HPR Rule 10(d) does not apply in the context of this case. As such, I would hold that Ramos's Petition, which was filed sixty-two days after the sixty-day limitations period began to run, was untimely. Accordingly, I would affirm the circuit court's determination that it did not have jurisdiction over Ramos's claims and would proceed to consider Ramos's remaining points of error, including whether in fact they may be moot.